## No. 5473.

**SUCCESSION OF MRS. VIRGINIA H. HALL, DECEASED WIFE OF CHARLES ROBB.**

**ON OPPOSITION TO APPLICATION FOR PROBATE.**

| 28 | 57 |
|----|-----|
| 121 | 832 |
| 121 | 842 |

| 28 | 57 |
|----|-----|
| f124 | 266 |
| 124 | 267 |

The error in this case is in supposing that an omission or defect exists in the will in controversy. Of course nothing can be added to that instrument to cure any want of legal requisites. But neither the laws of Illinois, where the testatrix died, nor of Louisiana, where she resided and left property, require that a will shall *state where* it was made. The place where it was made is a fact *dehors* the will, which may be proved like any other fact. There is nothing in the objection that it would be establishing title to immovable property by parol evidence. The testament is in writing, and is the title to the property bequeathed.

To prove where the aforesaid will was made, so as to ascertain what laws control its form, would no more conflict with the prohibition against proving title to real property by parol than would be the proving of the handwriting to an olographic testament by parol, or the genuineness of a vendor's signature to an act *sous seing prive*.

The will, which is the basis of this controversy, was made according to the formalities prescribed by the laws of Illinois. Articles 1653 and 1654 of our Code contain similar provisions.

The objection to the testimony of Charles Robb on the ground that he is the legatee under the will was properly overruled. He is not an attesting witness to the will. For that purpose he would have been incompetent. But, in a Louisiana court, he was a competent witness to prove any fact in regard to the matter in controversy which he might know.

The article 1689 of the Civil Code clearly authorizes the probate of a foreign will in Louisiana. It declares: "This order of execution shall be granted without any other form than that of registering the testament, if it be established that the testament has been duly proved before a competent judge of the place whence it was received. *In the contrary case* the testament cannot be carried into effect, without *its being first proved* before the judge of whom the execution is demanded.

APPEAL from the Second District Court, parish of Orleans. *Tissot, J. J. McConnell,* for opponents on the matter of probate of the will and appellants. *Hyams & Jonas,* for Charles Robb, legatee under the will, and appellee.

LUDELING, C. J. This is an appeal from a judgment of the Second District Court of New Orleans admitting to probate her testament.

It is alleged that the will was made in Illinois on the twenty-first of September, 1871. Mrs. Robb died in 1873 out of the State of Louisiana, where she resided. The heirs-at-law, who oppose the probate, deny that the will was made in Illinois; and they allege that, inasmuch as it does not appear in the face of the instrument that it was made in Illinois, that fact cannot be proved by any other evidence. They deny the validity of the will under the laws of Illinois, and they deny that any witness can be permitted to testify in our courts in relation to the matters in dispute, except he would be a competent witness in the courts of Illinois, if the suit were pending there; and, lastly, they deny that a foreign will, void under our laws, and not probated when it was made, can be probated in Louisiana. In support of the first objection, that the omission in the will to state where it was executed cannot be sup-

plied by parol evidence, the opponents urge the following reasons: That it would be engrafting the laws of Illinois on the instrument, and establishing title to immovable property in this State by parol evidence.

The error is in supposing that an omission or defect exists in the will. Of course, nothing can be added to that instrument to cure any want of legal requisites. Neither the laws of Illinois nor of Louisiana require that a will shall state *where* it was made. The place where it was made is a fact *dehors* the will, which may be proved like any other fact. Nor is there any force in the objection that it would be establishing title to immovable property. The testament is in writing—it is the title to the property bequeathed. To prove where the will was made, so as to ascertain what laws control its form, would no more conflict with the prohibition against proving title to real property by parol than would the proving of the handwriting to an olographic testament by parol, or the genuineness of a vendor's signature to an act *sous seing prive*.

Is the will valid according to the laws of Illinois? It is signed by the testatrix; and following her signature is the following statement or *proces verbal:* "Signed, sealed, published, and delivered by the said Virginia H. Robb, to be her last will and testament, in the presence of us, who were present at the same time, and we, at her (testatrix's) request, and in her presence, and in the presence of each other, at the same time subscribed our names as witnesses."

Witness,        ISAAC C. DAY,      } Chicago, Ill.
              JAMES H. MARSH, }

The second section of the Illinois statute of wills—Revised Statutes of Illinois, 1861—which was offered in evidence, declares: "All wills, testaments, and codicils by which any lands, tenements, hereditaments, annuities, rents, or goods and chattels are devised shall be reduced to writing and signed by the testator or testatrix; or by some person in his or her presence, and by his or her direction, and attested in the presence of the testator or testatrix by two or more credible witnesses; two of whom declaring on oath or affirmation before the court of probate for the proper county that they were present and saw the testator or testatrix sign said will, testament, or codicil in their presence, or acknowledge the same to be his or her act and deed, and that they believed the testator or testatrix to be of sound mind and memory at the time of signing or acknowledging the same, shall be sufficient proof of the execution of said will, testament, or codicil to admit the same to record," etc.

Also see Public Laws of Illinois, 1871–1872, pages 775 *et seq.*, offered in evidence, which show that the act was still in force when the will was made.

Under the statute, the indispensable requisites of a will are that "it

must be reduced to writing, it must be signed by the testator, or by some one in his presence and by his direction, and it must be attested in the presence of the testator by two or more credible witnesses." 43 Ill. Rep. 148; 42 Ill. Rep. 377.

These formalities were observed in the execution of Mrs. Robb's will. Section seven of the same statute provides that "in all cases where any one or more of the witnesses to said will, testament, or codicil as afore-said shall die, or remove to some distant country unknown to the parties. concerned, so that his or her testimony cannot be procured, it shall be lawful for the probate justice, or other court having jurisdiction of the, subject matter, to admit proof of the handwriting of any such deceased or absent witness as aforesaid, and such other secondary evidence as is. admissible in courts of justice to establish written contracts generally in similar cases; and may, thereupon, proceed to record the same, as, though such will, testament, or codicil had been proved by such sub-scribing witness or witnesses in his, her, or their proper persons."

Articles 1653 and 1654 of our Code contain similar provisions.

The execution of the will was proved by one of the subscribing wit-nesses, who also testified that the signature of the other attesting witness was genuine, and that he was dead. The deceased witness's. signature was proved by other witnesses, whose testimony was properly received. 3 R. 427; 2 R. 434.

The objection to the testimony of Charles Robb on the ground that, he is the legatee under the will was properly overruled. He is not, an attesting witness to the will; for that purpose he would have been incompetent. But, in a Louisiana court, he was a competent witness to prove any fact in regard to the matters in controversy which he might, know. 9 An. 148; 25 An. 85.

The last objection is that a foreign will, not having the formalities. required by the Civil Code, cannot be probated in Louisiana.

The cases of Robert vs. Allier's agent, 17 La. 17, and Succession of Robert, 2 Rob. 427, are relied upon by the opponents to support this. position.

Whatever was said in the first case, which may seem to support this. view was *obiter dictum*. That was a suit in the commercial court of New Orleans for the ownership of certain notes found in the succession of Robert. Allier, the legatee, claimed the notes under an olographic will made in France; the mother of Robert claimed them as heir-at-law. No probate of the will had been made either in France or in this State; and this court said that until it had been proved somewhere effect could not be given to it in Louisiana. Subsequently, a copy of this will was. probated in Louisiana, and it is reported in 2 Rob. 427. If the case of Allier's agent can be regarded as bearing upon the question under con-

sideration, it is an authority in favor of the plaintiff; for a foreign olographic will was admitted to probate in Louisiana, without its production in the court, because it had been deposited by order of a French tribunal in a notary's office, from which it could not be withdrawn.

The case of the Succession of McCandless, 3 An. 579, seems also to recognize the right of Louisiana courts to probate foreign wills.

In the case of Allier's agent this court refused to give effect to the testament till it had been proved somewhere.

But the article 1689 of the Civil Code clearly authorizes the probate of a foreign will in Louisiana. It declares " This order of execution shall be granted without any other form than that of registering the testament if it be established that the testament has been duly proved before a competent judge of the place where it was received. In the contrary case, the testament cannot be carried into effect without its being first proved before the judge of whom the execution is demanded."

It is therefore ordered that the judgment of the district court be affirmed with costs of appeal.