[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 592 
Salvatore Ferrara and Josephine Taulli were married in Italy and came to New Orleans in 1918. With the earnings of their joint industry they bought a home here, Nos. 2466 and 2468 North Rampart street, worth about $2,000. Mrs. Ferrara died on the 23d of March, 1930. She did not leave either an ascendant or a descendant relation. The nearest blood relations surviving her were a nephew, named Ralph De Rosa, in New Orleans, and his two sisters, in Italy. Mrs. Ferrara was survived also by her husband. She did not own any property other than her half interest in the community property, being the house and lot on North Rampart street and the household furniture and effects. She left a will, dated June 4, 1920, in nuncupative form, *Page 594 
by public act, in the Italian language. The only bequest made in the will was the bequest to the husband, Salvatore Ferrara, of the usufruct of whatever property the testatrix might own at the time of her death. She declared in the will: "At the death of my husband my property belongs to my heirs." She appointed her husband executor of the will. But he did not have the will probated, the obvious reason being that the will could not have any effect, because the estate of the executrix consisted only of her half interest in the community property; and, according to article 915 of the Civil Code, when a married person dies, not survived by his or her father or mother or by a descendant heir, and without having made a testamentary disposition of his or her share of the community property, such undisposed of share is inherited by the surviving spouse in full ownership. If Mrs. Ferrara had left any property belonging to her separately, it would have been inherited by her nephew, Ralph De Rosa, and her two nieces in Italy, subject to the life usufruct imposed by the will in favor of Salvatore Ferrara. In that event it would have been necessary for Salvatore Ferrara to have the will probated, in order to avail himself of the usufruct of the separate estate of his wife. But there was no reason why he should claim under a will the usufruct of property which he inherited in full ownership.
After the death of Josephine Taulli Ferrara, Salvatore Ferrara married Rose Micheli; and thereafter they bought, during the marriage, four lots of ground, which became the property of the second *Page 595 
matrimonial community. Salvatore Ferrara made a will, in nuncupative form, by public act, dated January 26, 1933, in which he bequeathed to his nephew, Antonino Ferrara, the house and lot on North Rampart street, which had belonged to the first matrimonial community, and bequeathed to his second wife, Rose Micheli Ferrara, all other property that he might die possessed of. He appointed his wife executrix of the will. He died on the 4th of March, 1937, owning the house and lot on North Rampart street, which had belonged to the first matrimonial community, and owning also the half interest in the four lots of ground belonging to the second community. He did not leave either an ascendant or a descendant heir.
On the eighth day after Salvatore Ferrara died, his nephew, Ralph De Rosa, filed a petition in court to have the will of Josephine Taulli Ferrara, dated June 4, 1920, admitted to probate, and to have him, Ralph De Rosa, appointed dative testamentary executor. He averred that Salvatore Ferrara, the executor named in the will, had failed to have the will probated, and had died; and that he, Ralph De Rosa, as an heir of Josephine Taulli Ferrara, desired to have the will probated, and to have an inventory made of her estate. In due course of the ex parte proceeding the will was ordered probated; Ralph De Rosa was appointed dative testamentary executor; and an inventory of the estate was made. The only property found belonging to the succession of Josephine Taulli Ferrara, and placed upon the inventory, was her *Page 596 
half interest in the house and lot on North Rampart street, which half interest was appraised at $1,000.
Two weeks after Ralph De Rosa opened the succession of Josephine Taulli Ferrara, a petition was filed by the widow, Rose Micheli Ferrara, and Antonino Ferrara, opening the succession of Salvatore Ferrara and, ostensibly, opening also the succession of Josephine Taulli Ferrara. The petitioners asked to have the succession of Salvatore Ferrara recognized as the owner of the house and lot on North Rampart street; that is, to have his succession recognized as owner of one-half of the property by inheritance from his first wife, Josephine Taulli Ferrara, and of the other half as surviving partner in community. The petitioners prayed also to have the will of Salvatore Ferrara, dated January 26, 1933, probated; to have Antonino Ferrara sent into possession as owner of the house and lot on North Rampart street; and to have the widow, Rose Micheli Ferrara, sent into possession as owner of all other property belonging to her husband's estate, and particularly of the four lots of ground described in the petition. It appears that the attorney representing the widow, Rose Micheli Ferrara, and Antonino Ferrara, in the opening of the succession of Salvatore Ferrara, did not observe that the succession of Josephine Taulli Ferrara had been opened already on the petition of Ralph De Rosa. Afterwards, when it was discovered that the succession of Josephine Taulli Ferrara had been opened under two separate titles and dockets numbers, the two probate *Page 597 
proceedings were consolidated, by an order of court.
On the 25th of March, 1937, an ex parte judgment was rendered on the petition which had been filed by the widow, Rose Micheli Ferrara, and Antonino Ferrara, recognizing the succession of Salvatore Ferrara to be the owner of the house and lot on North Rampart street, that is, as owner of one-half of the property by inheritance from his wife, Josephine Taulli Ferrara, and as owner of the other half of the property as surviving partner in community; and recognizing Antonino Ferrara to be the owner of the same property and sending him into possession thereof as legatee under the will of Salvatore Ferrara; and recognizing the widow, Rose Micheli Ferrara, to be the owner of all other property left by her husband, and particularly of the four lots of ground belonging to the second matrimonial community, and described in the judgment.
Four days after the judgment was rendered, sending Antonino Ferrara into possession as owner of the house and lot on North Rampart street, and sending the widow, Rose Micheli Ferrara, into possession as owner of all other property of the succession of her husband, Ralph De Rosa, on behalf of the succession of Josephine Taulli Ferrara, sued to annul the judgment, on the ground that it was obtained on the allegation that Josephine Taulli Ferrara had died intestate, whereas, in truth, she had left the will dated June 4, 1920, bequeathing the usufruct of her property to her husband, and declaring that at *Page 598 
his death the property belonged to her heirs. Ralph De Rosa averred that he and his two sisters in Italy, as the heirs of Josephine Taulli Ferrara, inherited the house and lot on North Rampart street. He averred that Salvatore Ferrara had sold other property belonging to the first matrimonial community for $12,000, and had collected and retained the price, and that the succession of Josephine Taulli Ferrara was entitled to half of the $12,000. He averred that Salvatore Ferrara had retained the household furniture and effects belonging to the first community, worth $2,000, and that the succession of Josephine Taulli Ferrara was entitled to half of the $2,000. He averred that the widow, Rose Micheli Ferrara, and Antonino Ferrara, by accepting the succession of Salvatore Ferrara unconditionally, had made themselves liable in solido to the succession of Josephine Taulli Ferrara for the two debts amounting to $7,000. Hence he prayed that the judgment dated March 25, 1937, sending Antonino Ferrara into possession as owner of the house and lot on North Rampart street, and sending the widow, Rose Micheli Ferrara, into possession of all other property of the estate of Salvatore Ferrara, should be annulled; that he, De Rosa, as executor, should have judgment against the widow, Rose Micheli Ferrara, and against Antonino Ferrara, in solido, for $7,000; and that the four lots belonging to the second matrimonial community, and the undivided half of the house and lot on North Rampart street, formerly belonging to the first community, should be sold to satisfy the judgment of $7,000. *Page 599 
The allegation in Ralph De Rosa's petition, that he and his two sisters, as the heirs of Josephine Taulli Ferrara, inherited her half interest in the house and lot on North Rampart street, was merely an error of law. And so was the allegation concerning the half of the proceeds of the sale of other property belonging to the first community, alleged to have been sold by Salvatore Ferrara for $12,000, and the allegation concerning a half interest in the household furniture and effects belonging to the first community. It is alleged in De Rosa's petition that the house and lot on North Rampart street and the household furniture and effects, and the property which Salvatore Ferrara is said to have sold for $12,000 during his marriage with Josephine Taulli Ferrara, all belonged to the matrimonial community between Salvatore Ferrara and Josephine Taulli Ferrara. And it is admitted that Josephine Taulli Ferrara was not survived by either of her parents or by a descendant heir. Hence it follows that everything that Ralph De Rosa claims that he and his sisters inherited from Josephine Taulli Ferrara was in fact inherited by her husband, Salvatore Ferrara, according to article 915 of the Civil Code.
In response to the suit of Ralph De Rosa, the widow, Rose Micheli Ferrara, and Antonino Ferrara, pleaded that De Rosa had no cause of action, nor right of action. In connection therewith, the defendants Rose Micheli Ferrara and Antonino Ferrara filed a petition alleging that, after obtaining the judgment sending them into possession of the estate of Salvatore Ferrara, they *Page 600 
discovered that Josephine Taulli Ferrara had made a will, in nuncupative form by private act, dated January 15, 1923, but that they did not know where the will could be found. They asked for and obtained an order for a search for the will. The notary public to whom the order was directed made a return to the effect that he could not find a will of Josephine Taulli Ferrara dated January 15, 1923, but that he had evidence of the fact that such a will was made and was either lost or destroyed. Thereafter, the widow, Rose Micheli Ferrara, and Antonino Ferrara produced a typewritten document purporting to be, and alleged to be, a carbon copy of a will made by Josephine Taulli Ferrara, in nuncupative form by private act dated January 15, 1923; and they averred that the original document had been either lost or destroyed. Hence they prayed to be allowed to prove that the alleged lost or destroyed will once existed, and to have the same admitted to probate.
According to the carbon copy of the alleged will, Josephine Taulli Ferrara bequeathed to her husband, Salvatore Ferrara, everything that she might die possessed of, and, in the event of his death, bequeathed to her nephew, Ralph De Rosa, and to her husband's nephew, Antonino Ferrara, everything that the testatrix might die possessed of; she appointed her husband executor of the will, and, in the event of his death, appointed Ralph De Rosa and Antonino Ferrara executors; and she declared that she revoked all previous wills. In their petition to have the alleged lost or destroyed will probated, *Page 601 
the widow, Rose Micheli Ferrara, and Antonino Ferrara, admitted that the alleged will, if probated, could not have any effect whatever except to revoke the will which Josephine Taulli Ferrara had made on June 4, 1920, which had been probated. They admitted that the alleged lost or destroyed will could not affect the order of succession or devolution of the estate of Josephine Taulli Ferrara.
Answering the petition of Rose Micheli Ferrara and Antonino Ferrara, Ralph De Rosa, as executor of the will of Josephine Taulli Ferrara, dated June 4, 1920, denied that she ever made any other will. He averred that she was illiterate, could not speak or understand the English language at all, and hence could not have dictated the alleged lost or destroyed will, which purported to be a dictation by her in the English language.
The case went to trial on the issues which we have described, and the trial resulted in a judgment in favor of the widow, Rose Micheli Ferrara, and Antonino Ferrara, ordering the alleged lost or destroyed will probated, and annulling the order by which the will dated June 4, 1920, in the Italian language, was probated, and annulling the appointment of Ralph De Rosa as executor. Ralph De Rosa, as executor, is appealing from the decision.
The principal complaints of the appellant are, first, that the alleged lost or destroyed will was admitted to probate and ordered executed without being proved by the testimony of more than two of the *Page 602 
parties alleged to have been witnesses to the making of the will; and second, that in fact Josephine Taulli Ferrara was not capable of dictating a will in the English language, and hence that no such will was ever dictated by her.
According to article 1648 of the Civil Code, a nuncupative testament under private signature cannot be admitted to probate or ordered executed until it has been proved by the testimony of at least three of the five or more persons who were witnesses to the making of the will. In article 1653, it is provided that if some of the persons who were witnesses to the making of the nuncupative testament under private signature be dead or absent from the state, so that it is not possible to procure the testimony of three of them for the purpose of probating the testament, it will suffice to prove it by the testimony of those who are living in the state; and in article 1654 it is provided that, if none of the persons who were witnesses to the making of such a testament is living in the state, the testament may be admitted to probate on the testimony of any two credible witnesses who swear that they recognize the signatures of the parties who signed the testament.
In this case, the alleged lost or destroyed will has been admitted to probate on the testimony of only two of the five persons who were said to have been witnesses to the making of the will. After the two witnesses had testified, the attorney for the widow, Rose Micheli Ferrara, *Page 603 
and for Antonino Ferrara, announced that he would not call any of the three other persons who were said to have been witnesses to the making of the will, because he, the attorney, understood that one of the alleged witnesses was dead, and because the two other persons alleged to have been witnesses to the making of the will had no recollection of the making of the will. We find it unnecessary to decide whether that statement of the attorney for the proponents of the alleged lost or destroyed will was a sufficient warrant for the judge to admit the alleged will to probate on the testimony of only two of the five persons who were said to have been witnesses to the making of the will. We find it unnecessary, also, to decide, from the conflicting testimony in the case, whether Josephine Taulli Ferrara was capable of dictating a will in the English language. The reason why it is not necessary to decide these questions is that the appellant, Ralph De Rosa, either individually or as dative testamentary executor, has no interest in contesting, and hence no right to contest, the judgment by which Antonino Ferrara was sent into possession as owner of the house and lot on North Rampart street, and by which the widow, Rose Micheli Ferrara, was sent into possession of all other property belonging to the succession of Salvatore Ferrara. As we have said, Ralph De Rosa and his sisters did not inherit any of this property from their aunt, Josephine Taulli Ferrara; nor were they given anything by the will which their aunt made on June 4, 1920. The expression *Page 604 
in the will, "At the death of my husband my property belongs to my heirs," was not a testamentary disposition of the property, of which the testatrix gave the usufruct to her husband. The expression was intended merely to explain that what the testatrix bequeathed to her husband was only the usufruct of her estate, during his lifetime, and hence that, at his death, the property should be delivered to the heir or heirs who would inherit it according to the laws of inheritance. When the testatrix made her will, she did not know who would be her heir or heirs at law at the time of her death.
There is no reason why Salvatore Ferrara should have offered for probate the instrument said to have been delivered to him, as the will of his wife, Josephine Taulli Ferrara, dated January 15, 1923. According to the document purporting to be a carbon copy of the alleged lost or destroyed will, the testatrix bequeathed to her husband everything that she might own at her death; and, under the provisions of article 915 of the Civil Code, he inherited everything that his wife owned at the time of her death, because all that she owned was her half of the community property. One of the witnesses for the proponents of the alleged lost or destroyed will gave testimony to the effect that Salvatore Ferrara, purposely, destroyed the document, by burning it, about the time when he made the will dated January 26, 1933. Several witnesses testified that they saw the document in Ferrara's possession; and the one who *Page 605 
gave testimony as to the burning of the document testified that he advised Ferrara that the document was of no value and might as well be destroyed. Whether Ferrara did or did not destroy the document is a matter of no importance, because, even if it was a valid will and was probated according to law, it had no effect. It purported merely to bequeath to Salvatore Ferrara property which he inherited from the testatrix, and to revoke the will dated June 4, 1920, which had no effect because in it the testatrix merely bequeathed to Salvatore Ferrara the usufruct of property which he inherited from the testatrix in full ownership. There was no reason therefore why the widow, Rose Micheli Ferrara, and Antonino Ferrara, should have asked to have the alleged lost or destroyed will admitted to probate, or why they should have invoked the alleged lost or destroyed will in defense of the suit of Ralph De Rosa, as executor, to annul the judgment rendered on the 25th of March, 1937, sending Antonino Ferrara into possession as owner of the property on North Rampart street, and sending the widow, Rose Micheli Ferrara, into possession as owner of all other property belonging to the succession of Salvatore Ferrara. Ralph De Rosa's demand should have been rejected and his suit dismissed on the ground that he had no right of action, either as executor or individually; and the judgment which he sued to annul should have been declared valid, without the necessity of admitting to probate the alleged lost or destroyed will, which even when probated could have no effect. *Page 606 
Inasmuch as Salvatore Ferrara, by accepting tacitly the succession of Josephine Taulli Ferrara, assumed her obligations, all of the costs of these proceedings must be borne by his succession.
 Decree.
The judgment appealed from is set aside; the demand of Ralph De Rosa, dative testamentary executor, to annul the judgment rendered on the 25th of March, 1937, sending Antonino Ferrara into possession as owner of the property Nos. 2466 and 2468 North Rampart street, in New Orleans, and sending the widow, Rose Micheli Ferrara, into possession of all other property belonging to the succession of her husband, Salvatore Ferrara, is rejected, and the suit of the said Ralph De Rosa, executor, is dismissed; and the said judgment, dated March 25, 1937, is adjudged to be a valid judgment. The costs of these proceedings are to be borne by the succession of Salvatore Ferrara.
HIGGINS, J., absent.
 On Application for a Rehearing.